The first hurdle we're trying to overcome, which has been very important, is the particular serious crime issue. Could you please also introduce yourself for the record? Sure. My name is Sanjay Sophie, the petitioner. Thank you. So, Your Honor, the first issue is a particular serious crime issue. And in this case, the Board ruled that the petitioner was, in fact, convicted of a particular serious crime. However, the 459 statute, California Penal Code 459, does punish two, four, and six years. And as we've indicated, this is the minimal, the mitigated circumstance of two years. Would the State court judge and the prosecutor thought it would be appropriate to give only two years in this case to the petitioner? And then the date? Counsel, didn't your client concede that there was a person present in the home during the burglary? And if that is correct, why doesn't that make this crime a violent felony under California law? Your Honor, yes, it does. Under California law, it does. And we do recognize that. However, it's still not a particularly serious crime because of two other factors. One is that when he entered the home and the dwelling place, he did not know somebody was in there. Except that he said in his State court factual statement he pled to a crime that involved somebody being in there. This is true, Your Honor. Not an inhabited house, but a house with a person in it. Yes, Your Honor. That was subsequent to his entry. And the fact is that he did enter the place. He thought he was going to steal a television set. And then the petitioner then discovered that there was a third person inside the home. And then at that point, Your Honor, he, in fact, was the one who was stabbed and was apprehended by the individual inside the home. He actually testified otherwise, that he didn't think there was anybody in the house. But, I mean, there wasn't any. He didn't say there was ever anybody in the house. But he did in the State court say there was somebody in the house. Correct, Your Honor. After the fact, though. After he entered, then somebody was there. And then he admitted to that. And the 667.5A1 penal code, the enhancement for the particular, which would be the potential when there's another person inside, that's a violent act. However, it's still not a PSC because the particular series of crimes this Court has before ruled on is usually five years, at least five years, drug offenses, transportation of controlled substances, and narcotics trafficking. In any event, he would have to demonstrate that it was for asylum or withholding that it was a member of a particular social group. What's the particular social group that is not foreclosed by our cases? Correct, Your Honor. And also, interestingly, the Respondent has handed me a letter today, which I received in studying the case of Rodriguez-Alvarado. There was a new letter today? I haven't seen it. The Respondent has that. But you didn't mean that you'd filed it? You meant that the government offered it or provided it to you? Yes. And so the case you want us to consider is what? The Rodriguez-Alvarado v. Barr. Okay. I don't know if the Court has received this as well. It was addressed to the Court. It's apparently an unpublished opinion from this Court, but nevertheless, it does speak about an individual who is a member of a group like my client who took concrete steps to oppose gang membership and gang authority. Okay. What concrete steps did your client take? Well, in this case, after the shooting took place and Jocelyn was, in fact, shot in front of him, he avoided that. I don't know that the record says shot in front of him, but I'll take – I certainly think it was a very traumatic incident. The record is plain, and your client was deemed credible, and he didn't go to school for 10 years, and it sounds like he was horribly traumatized. But my question is – and I don't mean to make light of that, but your time is ticking, and I didn't see that he took any steps to oppose the gang. Well, Your Honor, he didn't – they asked him to join, and he didn't – at that point, he was asked to join. He didn't join. He, in fact, went into hiding, and then obviously got scared of what was going to – what was happening. Obviously, he was traumatized, and that's why he took a step not to join. He could have joined there. But that's exactly the group that we've said is not a particular social group, just people who don't join as opposed to people who actively oppose the gang, which he didn't do. He was hiding out, Your Honor. Right, exactly. He was hiding out, so he couldn't have been actively opposing the gang. Well – I just don't – oh, go ahead. Judge Graber, please. I'm sorry. I have one other issue, and it relates to your Convention Against Torture claim. The issue that I'm wanting your comments on is whether substantial evidence supports the BIA's determination that the government would acquiesce in any future torture that your client would suffer were he to be returned. So would you address the issue of government acquiescence? Yes, Your Honor. We did submit – and there are country reports, and country conditions were part of the record and were not objected to by the Department of Homeland Security at the IJ level, wherein there's articles showing the police allowing gang violence and gang recruitment to take place, and they do not prevent that. Or, in some cases, there's corruption, Your Honors, wherein the police are working in peri-delicto with the local gangs in the local areas in helping to recruit or helping to put them in – the involvement in those gangs, and they also support – My concern is that we have a couple of cases that say that if the government is simply ineffective in investigating or ineffective in preventing crime, ineffective in stopping gang violence as a practical matter, that does not mean willful blindness, and it does not mean acquiescence. And I'm just wondering why that isn't a reasonable, permissible conclusion, not the only conclusion, but why that isn't a permissible conclusion for the BIA to have come to in this case. That was unreasonable for the BIA to come to that conclusion, Your Honor. And the reason is that we have indicated – we have put articles forward wherein, again, the police are not just not doing anything. They're actively involved in partnership with these – with the Mara Salvatrucha in Honduras. And as a result, that partnership is the persecution that my client would be suffering and would suffer if he's returned to Honduras because of what these local police do. Not only do they not protect, but they go further and help. You know, I'm curious if you can point me to a particular page because the country condition report, it seemed to me, dealt with government corruption but not related to gang enforcement specifically. There was political corruption, judicial proceedings corruption, and there, in fact, seemed to be steps the government took to try to address the problem of gang violence and homicide. So can you point me to particular pages that support your assertion that the police participated in the gang violence? I mean, the petitioner testified to that, but in terms of the country reports, they seem to point in a different direction. Well, Your Honor, it was also my client's assessment. I have read an article, and I don't see it in front of me, Your Honor. It may have been the country reports or it may have been an article that I have seen in making this representation to court that there's been an agreement between or some sort of collaboration between local law enforcement and the Mara Salvatrucha. But I'll take my time to find that particular page. Okay. Thank you very much. Do you want to reserve your time? Yes, Your Honor. Thank you very much. Thank you. Good morning. May it please the Court. Greg Mack for the Attorney General. Just one housekeeping matter with respect to the letter that Petitioner's Counsel pointed to. That was a 28-J letter that was filed back on October 28th, and when he walked in this morning, he asked me if I had the letter. Oh, I see. I handed it to him. Thank you very much. That's where the reference to the letter being handed over today comes from. So 21 years ago, Petitioner was confronted by gang crimes, gang intimidation, and gang recruitment. And six years ago, he was convicted of burglary. The Court lacks jurisdiction to review his untimely asylum application determination by the board and an immigration judge. The Court simply lacks jurisdiction to review that determination. The withholding claim is barred by the particularly serious crime bar because of the California conviction for burglary, which he doesn't dispute. And the California courts found that it was a burglary involving a person present at home, so it is a particularly serious crime. And then on the merits, as has been indicated, the Court has already concluded that gang crimes, gang intimidation, and gang recruitment don't add up to a particular social group and lack a nexus. Well, in some circumstances it can, but the question is whether it meets those circumstances. It doesn't in this circumstance because the board points out that he's not even a member of the particular social groups that he claimed to be a member of. Well, one of them he isn't. One of them he might be, but it's probably not a particular social group. Right. Basically, after this horrific, which we'll concede is a horrific event at the school, he says he stayed in his home for several years. So that's not confronting the gangs. That's not opposing the gangs in any proactive or active manner. It's a passive resistance in his home that he opposed the gang. He was found credible, right? Correct, Your Honor. So could you go to the Kat claim and tell me about what's the evidence show, because I've been over this, looking at the evidence about the events that happened much more recently. You hearken back to 21 years ago. I haven't done the math. I think that's the third-grade incident. That's the third-grade incident. Okay, great. And then since then he's had a cousin and I think another compatriot who had been present in the classroom go back and have these episodes. Can you talk about those, please? Those two episodes, I think the claim is that they are related back to the third-grade incident in 1998, and the board found that those events, there wasn't sufficient evidence to say that those were related. Well, actually what it found was that there was no evidence, and that's not true at all, is it? There was evidence because he specifically said that one of these people, before they were killed, was asked about where he was and where the other person was. So there was evidence, and the fact that why isn't the fact that the board said there was no evidence suggested they really didn't look at the evidence. Well, I think what the board was saying, there isn't sufficient evidence. With respect to the asylum claim. Is that what the board said? Did it say there wasn't sufficient evidence? The board says with respect to the asylum claim, there wasn't sufficient evidence. I'm talking about the asylum claim. Just CAT. Just CAT. On CAT, the board simply cites the standard with respect to CAT. It's the immigration judge that says there's no past torture, no government acquiescence. So I'm trying to focus specifically on the extent to which he faces torture, if he were to return. And I think he's pointing to, and I'm summarizing, paraphrasing, but he's pointing to this episode where his cousin went back, right, lost his life, and then his friend's daughter was also killed. And my understanding, to follow up on Judge Berzon's question, is that this person, this petitioner, was found credible and he testified that his father told him, right, about this threat that was made or inquiry that was made about his own whereabouts at the time. Is that when his cousin was killed? I believe his cousin was killed in 2017 and his friend's daughter or another cousin's daughter was killed or murdered in 2014. And he tries to draw the connection between the two back to the 1998 school incident. That's right, and I think that's what Judge Berzon's trying to call your attention to. So we're trying to get our arms around whether the board said there's no evidence of any connection or if there is some evidence vis-a-vis what his father told him. And I think what the board did was point to, again, the standard with respect to CAT and then pointed to the immigration judge's decision. All right, and what did the immigration judge say? An immigration judge says there's no past torture. He failed to carry his proof. There's no evidence that random people are still interested in harming him. There's no evidence in the record that indicates anyone in Honduras is looking for their respondent specifically to harm or to torture him. Is that accurate? I believe that is accurate, Your Honor. There's his father's statement, but we don't haveóthat's his testimony about the father's statement. But the board is saying there's no connection between the third-grade incident and the current events, I believe. But that's not the question. The question is whether there's evidence in the record that indicates anyone in Honduras is looking for their respondent specifically to harm or to torture him. Here we have these people who, according to his father, inquired about him and shortly afterwards killed his friend who was with him at the school. Is that not true? Well, that is true. That's what he says his father says, and we take that as true. And he was deemed credible. And he was deemed credible, and we take that as true. What does it mean to say there's no evidence? There is evidence. Well, the immigration judge also said there's no evidence that random people are still interested in harming him or that they have the ability to do so. And then the boardóexcuse me, the immigration judge also saysó Where does it say that? It says on 191 to 192, there's no evidence that random people are still interested in harming him or that they have the ability to do so. And then the immigration judge goes on to say the respondent has presented a claim of generalized violence and crime. I understand. They don't have the ability to do so. They just killed his friend and his other friend's daughter, his cousin and his other friend's daughter. So why don't they have the ability to do so? They just did so. And I think what the immigration judge was saying, this is an incident of generalized crime, and there's no evidence of Honduran government involvement or acquiescence. Well, you're mixing things up. We'll go to the acquiescence in a minute, or we can go there now if you want. But I'm trying to establish whether there was any accuracy in what was said here, whether they overlooked evidence, which would be a reason for remanding, right? Right. That, in fact, there was evidence that they were looking for him and there was a connection to the earlier incident, at least because the other two people who were one was killed and his daughter were killed were both present during the earlier incident, right? Right. They were present during the incident in 1998 at the school. And, again, I think what the immigration judge was saying is this is an incident of generalized violence and crime in Honduras. So their ability to do so certainly reflects in the 2014-2017 murders, but there's no connection, if you will, to that 1998 incident, which I think is what Petitioner is trying to draw upon. I'm not entirely sure why that matters anyway because they did ask about him for whatever reason they asked about him. But I still can't actually find this place where you say under the Convention Against Torture that the IJ said that there was generalized crime. I don't see that. I have it at 191 through 192, Your Honor. But that's not even where the IJ opinion is. The IJ opinion is at 161, 162. Well, let me point out, it appears two places in the record. You're at 160-ish on the IJ's decision. I have it at 191. There are two IJ decisions in the record. I see. All right. Let's talk about the acquiescence claim. It's 160 to 162 for the CAT determination in your version. Okay. What about the acquiescence issue that Judge Graber was asking about before? Well, the acquiescence issue is it's a generalized claim of violence and crime in its home country with no involvement of the Honduran government. And just because there's an imperfect response to crime in general, that doesn't mean somebody's eligible for CAT. Well, he did say several times that you, he did say these other incidents were reported to the police, but the police just say too bad and never do anything. He did say that, right? I'm sorry. He said that when his cousin was, I forget if it was the cousin was killed, the friend's daughter, or the other way around. But anyway, that he was fairly sure that at least one of those, maybe both were reported to the police, but in general what the police say is too bad for your loss and don't do anything. That's what he said. Right? That's what he says, but that doesn't mean the government's ineffective or would acquiesce in the torture. And I think also the immigration judge says with respect to CAT, the court notes that he can internally relocate to Honduras, and the court also notes that his father and sister still reside in Honduras in the alleged zone of danger, and there's no evidence that either his father or his sister has suffered any harm at the hands of the gang members. So, again, that goes to the question, and it doesn't compel the conclusion that the court must find eligibility for CAT relief here. But what did his father and sister have to do with anything? They were not at this location during that relevant time. But he tries to bring them in to the incident by claiming that his father and sister aren't in the zone of danger, but then he points to his friend's daughter who was killed, who's a family member who wasn't at the 1998 incident. So you can't have it on both ends. I'm sorry. Where did he say that his father and sister were in the zone of danger? No, his father and sister were not in the zone of danger in 1998 or with respect to current events. Okay. But with respect to the asylum claim, he tries to point to his family members or, excuse me, one friend's daughter was apparently targeted by the gangs because of the 1998 incident, and then yet he says his family members aren't in this similar zone of danger with respect to the CAT claim. So you can't have it both ways. Family is available with respect to asylum and pointing it as a way to get to asylum or withholding eligibility. My impression, maybe this is incorrect, was that the friend went back to Honduras with the daughter. Is that right? I believe that's correct. Right. So there weren't just... Oh, no, sorry. The friend went back. I'm not clear about whether the daughter went back. But the friend came to the U.S., then goes back to Honduras, and then the daughter is killed. Right. I understood that to mean that he and the daughter went back, and to get back at him, they killed the daughter. No. Well, he's pointing to the daughter with respect to the asylum, and then he's not pointing to family members close to him with respect to the CAT claim. You can't have it both ways in this regard. And I see my time is winding down, Your Honor. All right. Thank you very much for your argument. Sir, we'll give you a minute in rebuttal. You don't have anything else? I'm good. I'll submit what we have, Your Honor. I couldn't find the particular article, but it's what my client did testify to, that the police, in fact, he is aware of the police being involved in, and it's in the record, in joining in with the Mara Salvatrucha against him. And for that reason, Your Honor, obviously, he... I'm sorry. I'm not understanding. The testimony from my client. Yes. I know what your client said. Is there anything in the country reports? I couldn't find anything, Your Honor, at the moment, at this particular report. Well, there's a human rights report that says that corrupt senior police officials working with drug traffickers killed anti-narcotics officials. There was a commission to review systematically the performance and integrity of all police officials. They reviewed the personnel files of 3,004 officials and dismissed 1,835 officers while allowing 256 officers to retire voluntarily. Now, I suppose that could mean that they are doing something now, but this was all well after the time that he was there. So... There's one final issue I didn't raise. Your Honor, I don't want to bring up the one-year issue. The board ruled there were no changed circumstances. And, in fact, we've argued that there are changed circumstances because he did file within one year of learning of the murder of his friend. Or, I'm sorry, his cousin, in this case. And then he did file within one year immediately thereafter. And that was reasonable given that he was living here for many years. He was in fear. He had trauma. And then he did file it as soon as he learned of that situation. Okay. Thank you very much. Thank you, Your Honor. We thank you both for your arguments. The case of Martinez-Salgado v. Barr will be submitted.
judges: Graber, Berzon, Christen